UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GILBERT ROMAN,

       Plaintiff,

v.                         Case No. 8:16-cv-3449-T-33AEP

TYCO SIMPLEX GRINNELL,

       Defendant.
_____/

**ORDER**

       This matter comes before the Court upon Defendant Tyco Simplex Grinnell's Motion to Dismiss the Fourth Amended Complaint (Doc. # 29), filed on July 13, 2017. Pro se Plaintiff Gilbert Roman responded on July 31, 2017. (Doc. # 30). For the reasons that follow, the Motion is granted in part and denied in part.

**I.   Background**

       Roman initiated this action on December 19, 2016. (Doc. # 1). In the original Complaint, Roman stated in full:

> While working for Tyco Simplex Grinnell, I was harassed, eggs, mucus, Grease or tar thrown on company van. Placed in unfair and unsafe work Conditions. Causing me high blood pressure. All because an oral Contract was breached.
>
> I seek 7 million dollars in compensation and punitive damages For the wrong done to me.

1

(Id. at 1). The Court dismissed the Complaint on January 3, 2017, and granted Roman leave to file an amended complaint that clearly stated his claims and established the Court's jurisdiction. (Doc. # 7).

On January 17, 2017, Roman filed an Amended Complaint and affidavit. (Doc. ## 10-11). Based on the allegations of the Amended Complaint and affidavit, it appeared Roman was attempting to assert only a breach of oral contract claim against his former employer, Tyco, for failing to assign Roman to the higher-paying assignments he was promised when he accepted the job as a fire alarm inspector. (Doc. # 10). Additionally, Roman alleged that supervisors at Tyco placed him in unsafe working conditions and retaliated against him. (Id. at 2). The Court dismissed the Amended Complaint on January 18, 2017, advising Roman to "organize all his factual allegations clearly and succinctly in numbered paragraphs that state a claim for breach of contract" and to "clearly specify the basis for this Court's diversity jurisdiction." (Doc. # 12 at 7-8).

Roman then filed his Second Amended Complaint and an affidavit with exhibits on February 2, 2017, alleging breach of contract, as well as violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq., and the Occupational

Safety and Health Act (OSHA), 29 U.S.C. § 651, et seq. (Doc. # 13 at 3; Doc. # 14). Roman claimed $7,000,000 in damages because his side-business failed due to Tyco's refusal to pay him at the promised higher hourly rate. Additionally, Roman complained he was forced to work in confined and near-freezing spaces and was not paid for his travel time at the beginning and end of each day. (Id. at 2-3).

The Court dismissed the Second Amended Complaint on February 8, 2017, stating that, while the Second Amended Complaint was an improvement, "Roman has not corrected many of the problems pointed out in the Court's previous Orders." (Doc. # 15 at 4). The Order explained that Roman needed to separate his FLSA claim into its own count, and provide further details about the basis of that claim. (Id. at 5). The Court noted the FLSA allegations were unclear about the travel time for which Roman sought compensation, and the Court emphasized that clarity on the issue was important because daily commute time to and from work is generally non-compensable under the FLSA. (Id.). The Court also explained that OSHA does not create a private right of action, so Roman could not bring a claim under that statute. (Id. at 6).

Roman then filed his Third Amended Complaint. (Doc. # 16). The Third Amended Complaint included four different

counts: two counts for breach of oral contract, one count for "Unsafe-Unfair work conditions," which was brought under OSHA and the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. §§ 1581 et seq., and one count brought under the FLSA. Tyco filed its Motion to Dismiss the Third Amended Complaint on May 9, 2017, (Doc. # 23), and Roman responded, (Doc. # 26). The Court dismissed the Third Amended Complaint with leave to amend on June 5, 2017. (Doc. # 27). In that Order, the Court advised Roman that he must allege facts sufficient to show that enforceable contracts existed between him and Tyco and that he was forced to work in violation of the TVPRA. (Id.). Additionally, the Court advised Roman to clarify the basis for his FLSA claim for uncompensated travel time because the single-sentence claim was vague about, among other things, the type of travel upon which it was based. (Id. at 16).

Roman filed his Fourth Amended Complaint on June 28, 2017. (Doc. # 28). The Fourth Amended Complaint asserts claims for breach of oral contract, breach of implied contract, and violations of the TVPRA and FLSA. (Id.). Tyco moved to dismiss the Fourth Amended Complaint on July 13, 2017 (Doc. # 29), and Roman responded, (Doc. # 30). The Motion is now ripe for review.

## II. **Legal Standard**

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990)("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Furthermore, "[t]he scope of review must be limited to the four corners of the complaint." St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002).

Furthermore, the Court construes pro se pleadings liberally and holds them to a less stringent standard than those drafted by attorneys. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003). But, "a pro se litigant is still required to conform to procedural rules, and a district judge is not required to rewrite a deficient pleading." McFarlin v. Douglas Cty., 587 F. App'x 593, 595 (11th Cir. 2014).

## III. **Analysis**

Although Tyco acknowledges the Fourth Amended Complaint complies with Federal Rules of Civil Procedure 8 and 10, Tyco argues the Fourth Amended Complaint still fails to rectify the issues pointed out in the Court's previous Orders and does not state claims for any cause of action. (Doc. # 29 at 5). The Court will address each count in turn.

### A. **Breach of Oral Contract**

Count I for breach of oral contract alleges Roman established an oral contract with Tyco through an October of 2013 conversation with Inspection Manager Arkie Devenuto. During the conversation, Devenuto offered Roman a lower pay rate than Roman had requested — $21 per hour instead of $25 per hour — and "stated that [] Roman would get plenty of [prevailing] wage work [] if he accepted the lower rate of pay." (Doc. # 28 at 2). "Roman agreed to accept the lower

rate of pay, with the expectation that this would be offset by higher wages earned when [prevailing wage work] was available, as [such work] pays significantly higher rates of thirty dollars [] to fifty dollars [] per hour." (Id.).

But, between October of 2013 and May of 2014, "very little opportunity for [prevailing wage work] was provided." (Id.). "[A]dequate opportunity for" such work was not given until May of 2014, after Roman had a meeting "with the Inspection Manager to address this issue." (Id.). Roman alleges he suffered damages because of Tyco's failure to "provide consistent opportunity for [prevailing wage work] for approximately eight months of Roman's employment." (Id. at 3).

Despite the Court's previous Orders, Roman fails to plead sufficient details to determine that a contract was entered. He says he was promised prevailing wage work, "when [it] was available." (Id. at 2). But it does not appear the parties discussed how frequently prevailing wage work would be available or whether Roman would be assigned to every prevailing wage work assignment that arose during his employment. Such a vague promise to provide certain assignments "when [] available" fails to plausibly plead an oral contract was entered. See Lapine v. Seinfeld, 918 N.Y.S.

2d 313, 318 (N.Y. Sup. Ct. 2011)("[A] contract will not be found to have been formed if it is 'not reasonably certain in its material terms.'" (citation omitted)); see also Caniglia v. Chicago Tribune-New York News Syndicate, Inc., 612 N.Y.S. 2d 146, 147 (N.Y. App. Div. 1994)("The IAS court properly dismissed, without leave to replead, the plaintiffs' first cause of action, purporting to set forth a cause of action for breach of contract, as too indefinite, and therefore, unenforceable, for plaintiffs' failure to allege, in nonconclusory language, as required, the essential terms of the parties' purported . . . contract, including those specific provisions of the contract upon which liability is predicated . . .").

The Court previously warned Roman that he should "clarify how much prevailing wage work [he] was actually promised . . . or the timeframe for when or how often [he] would receive prevailing wage assignments." (Doc. # 27 at 11). But Roman has failed to do so. Therefore, Roman has failed to sufficiently plead facts regarding the terms of the alleged oral contract.

Also, even if the conversation with Devenuto was sufficient to create a binding oral contract with Tyco, Tyco argues that Roman has failed to plausibly allege a breach of

that contract. (Doc. # 29 at 7). Roman alleges that during an eight-month period he was "not provide[d] consistent opportunity for" prevailing wage work. (Doc. # 28 at 3). But, although he "underst[ood] that ample opportunity for [such work] would be provided to him," he does not allege that prevailing wage work assignments were available during this time. (Id.). Because the supposed oral contract required Tyco to give Roman prevailing wage assignments only when they were available, the contract would only be breached if such assignments were actually available and Tyco refused to assign them to Roman. Roman has not alleged this. Therefore, the breach of oral contract claim is dismissed with prejudice.

### B.    Breach of Implied Contract

In Count II, Roman asserts for the first time that his alleged agreement with Tyco to receive commissions for multiple deficiency quoting work was an implied contract. Roman alleges he and Tyco entered an implied contract in 2014, "when Tyco first implemented a multiple deficiency quoting program, which stated it would pay inspection workers one-and-one-half percent (1.5%) to three percent (3%) commission rates." (Doc. # 28 at 3). When Roman left Tyco, "he had reached the ranking of sixth in the company, nationwide, for multiple deficiency quoting" and he "had reasonable

expectation that he would receive commission payments for his successes." (Id. at 3-4). Roman vaguely asserts "there was consideration exchanged between [the] parties when the program was established and made known to company employees." (Id. at 4).

There are many problems with Count II. First, Roman does not specify whether the alleged contract was implied-in-fact or implied-in-law. This is important because the two types of implied contracts are distinct. Under New York law, a contract implied-in-fact is a binding contract "formed by conduct, rather than words, that manifests the parties' mutual assent." Dixon v. NBCUniversal Media, LLC, 947 F. Supp. 2d 390, 400 (S.D.N.Y. 2013). "The elements of an implied-in-fact contract are the same as the elements of an express contract." Lapine, 918 N.Y.S.2d at 318 (citation and internal quotation marks omitted).

In contrast, a contract implied-in-law — also called a quasi-contract — "only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment." Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 516 N.E. 2d 190, 193 (N.Y. 1987). "A quasi-contractual obligation is one imposed by law where there has been no

agreement or expression of assent, by word or act, on the part of either party involved. The law creates it, regardless of the intention of the parties, to assure a just and equitable result." Bradkin v. Leverton, 257 N.E. 2d 643, 645 (N.Y. 1970). Claims for a contract implied-in-law are precluded "whenever there is a valid and enforceable contract governing a particular subject matter, whether that contract is written, oral, or implied-in-fact." Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 587 (2d Cir. 2006).

The case law cited by Roman in the Fourth Amended Complaint further confuses the question of what claim Count II is raising. As Tyco points out, the Fourth Amended Complaint quotes New York University v. Continental Insurance Company, 662 N.E. 2d 763, 769 (N.Y. 1995), regarding the implied covenant of good faith and fair dealing. (Doc. # 28 at 3-4; Doc. # 29 at 8). But the covenant of good faith and fair dealing is not the same as an implied contract. Rather, the implied covenant of good faith and fair dealing is a covenant that is a part of every contract "pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Dorset Indus., Inc.

v. Unified Grocers, Inc., 893 F. Supp. 2d 395, 405 (E.D.N.Y. 2012)(citation and internal quotation marks omitted).

But, because the implied covenant of good faith and fair dealing exists only for true contracts, the Court treats this claim as one for breach of a contract implied-in-fact, rather than a claim for breach of contract implied-in-law. See Payday Advance Plus, Inc. v. Findwhat.com, Inc., 478 F. Supp. 2d 496, 503 (S.D.N.Y. 2007)("[A] breach of the implied covenant is not a separate cause of action, but is instead one way of establishing a breach of contract."). And Roman's statement that "consideration [was] exchanged between the parties," though vague, supports that Roman is proceeding under a contract implied-in-fact theory. (Doc. # 28 at 4).

Again, to plausibly plead the existence of a contract implied-in-fact, Roman must allege "an offer, acceptance, consideration, mutual assent and intent to be bound" — the same elements required for an express contract. (Doc. # 27 at 9)(quoting Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004)). But the assent to form the contract may be demonstrated by the parties' conduct. Dixon, 947 F. Supp. 2d at 400.

Tyco argues that this claim should be dismissed with prejudice because Roman "has not [pled] sufficient facts

regarding how and under what circumstances the parties entered into either a contract or implied contract, or what eligibility and performance requirements that the parties were obliged to follow to fulfil their obligations under the alleged contract." (Doc. # 29 at 8).

The Court agrees. While Roman conclusorily alleges "there was consideration exchanged between [the] parties when the program was established and made known to company employees," he does not elaborate on what this consideration was. (Doc. # 28 at 4). Roman acknowledges he reached a high ranking in multiple deficiency quoting at Tyco — but he does not state whether he performed more multiple deficiency quoting as a result of Tyco's apparently gratuitous promise to pay commissions. Indeed, Roman does not elaborate on the meaning of "multiple deficiency quoting" or explain whether Tyco set any qualifications for or limitations on participation in the multiple deficiency quoting program.

Even if Tyco's institution of the program was an offer that Roman accepted and for which consideration was exchanged, Roman has not pled a breach of that contract implied-in-fact. Roman does not explicitly allege that Tyco failed to pay him commissions for his multiple deficiency quoting work. Such vague allegations, even construed

liberally in light of Roman's pro se status, fail to state a claim for breach of contract implied-in-fact. Count II is dismissed with prejudice.

## C.  **TVPRA Forced Labor Claim**

In Count III, Roman alleges Tyco violated 18 U.S.C. § 1589(a)(2) of the TVPRA. (Doc. # 28 at 4-5). Section 1589(a)(2) makes it unlawful for any person to "knowingly provide[] or obtain[] the labor or services of a person . . . by means of serious harm or threats of serious harm to that person or another person." The term "serious harm" is defined as:

> any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

18 U.S.C. § 1589(c)(2).

Roman alleges that, on December 31, 2014, "he was assigned a job at a residence in Kingston, New York" that "required him to enter into a crawl space area underneath the building, a confined space." (Doc. # 28 at 5). Roman "was expected to enter into the crawl space alone." (Id.). When Roman "expressed concern regarding completion of the job," he

"was told by the inspection manager that he was refusing work [and] [Roman] [was] harassed." (Id.). Sometime after "having completed the assigned job" and "being harassed," Roman alleges he "had to leave work at Tyco for safety reasons." (Id.).

In analyzing whether labor was forced, courts "must distinguish between improper threats or coercion and permissible warnings of adverse but legitimate consequences." Headley v. Church of Scientology Int'l, 687 F.3d 1173, 1180 (9th Cir. 2012)(internal quotation marks and citation omitted). Roman does not clearly allege that his supervisor threatened termination. Rather, he alleges his supervisor stated Roman "was refusing work" and "harass[ed]" him in some unspecified way. Even if his supervisor directly threatened to fire Roman if Roman refused the job assignment, Roman has not explained why this went beyond a legitimate warning of a consequence of refusing to do his job.

Nor has Roman explained why being terminated from his job would be sufficiently serious to constitute "serious harm," besides conclusorily asserting that a threat of termination is serious harm. (Doc. # 28 at 5). He does not allege that he would face deportation if he lost his job or that he was otherwise in an especially precarious financial

position. Cf. Franco v. Diaz, 51 F. Supp. 3d 235, 247 (E.D.N.Y. 2014)("Plaintiff sufficiently alleges that she was coerced into working by threats of deportation if her work was not satisfactory. Accordingly, she has properly stated a claim under 18 U.S.C. § 1589(a)."). While Roman argues in his response that he has sufficiently alleged a violation of § 1589(a)(4), (Doc. # 30 at 3), the Fourth Amended Complaint only alleges Tyco violated § 1589(a)(2).

Furthermore, Roman was free to leave his job if he disagreed with the working conditions. Indeed, Roman acknowledges he eventually chose "to leave work at Tyco for safety reasons." (Doc. # 28 at 5). Admittedly, the TVPRA "does not require that plaintiffs be kept under literal lock and key." Franco, 51 F. Supp. 3d at 247. But the allegation that Roman was free to leave work at Tyco, combined with Roman's other vague allegations about a single work assignment, fail to state a claim for forced labor. See Headley, 687 F.3d at 1180-81 (affirming summary judgment on TVPRA claim and noting plaintiffs "had innumerable opportunities to leave the defendants" but "chose instead to stay with the defendants and to continue providing their ministerial services").

Roman has not plausibly alleged that the work he performed went beyond the satisfaction of his legitimate job

duties or that his supervisor's comments went beyond a permissible warning of a possible termination. Accordingly, Count III for violation of the TVPRA is dismissed with prejudice.

### D. **FLSA Overtime Claim**

"To state a claim under the FLSA for unpaid wages, an employee must allege (1) an employment relationship; (2) that the employer or employee engaged in interstate commerce; and (3) that the employer failed to pay overtime compensation and/or minimum wages." Patterson v. Dow Enterprises-Naples Hidden Storage, LLC, No. 2:15-cv-438-FtM-29MRM, 2015 WL 8772843, at *2 (M.D. Fla. Dec. 15, 2015).

However, the Portal-to-Portal Act, 29 U.S.C. § 254(a), exempts certain activities from compensation under the FLSA. The following activities are exempted:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

> (2) activities which are preliminary to or postliminary to said principal activity or activities,

> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. For purposes of this subsection, the use of an employer's vehicle

for travel by an employee and activities performed
by an employee which are incidental to the use of
such vehicle for commuting shall not be considered
part of the employee's principal activities if the
use of such vehicle for travel is within the normal
commuting area for the employer's business or
establishment and the use of the employer's vehicle
is subject to an agreement on the part of the
employer and the employee or representative of such
employee.

29 U.S.C. § 254(a).

Thus, "for instance, '[n]ormal travel from home to work [whether at a fixed location or at different job sites] is not worktime' because it is 'an incident of employment,' and is therefore not compensable." <u>Burton v. Hillsborough Cty., Fla.</u>, 181 F. App'x 829, 834 (11th Cir. 2006)(quoting 29 C.F.R. § 785.35). Still, "§ 254(a) does not eliminate employer liability for all work-related travel – that is, not all work-related travel is non-compensable time." <u>Id.</u> Indeed, "[t]ime spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked." 29 C.F.R. § 785.38.

Count IV alleges Tyco violated the FLSA "by not providing appropriate compensation for overtime work completed during travel time to and from a job site." (Doc. # 28 at 5). Roman describes this overtime work as "approximately five [] hours

per week traveling to and from job sites, for which he was not compensated." (Id. at 6).

Tyco argues that the FLSA claim is "unclear whether [Roman] is claiming compensation for commute time before the first job and after the last job or whether he is claiming [] compensation for travel time between the first job and the last job." (Doc. # 29 at 11). The Court disagrees. The Court reads the Fourth Amended Complaint's phrasing "travel time to and from a job site" as an assertion that Roman was entitled to compensation for all of his travel time to and from job sites, whether it was his morning and evening commute or travel from one job site to the next during the workday. The Court's reading aligns with Roman's response, in which he insists he is entitled to both travel time between job sites during the workday and commute time to and from work. (Doc. # 30 at 3). Therefore, in ruling on Tyco's Motion, the Court will treat the FLSA claim as one for all travel time.

Tyco also insists the FLSA claim should be dismissed at least "to the extent that [Roman] is claiming pay for commute time." (Doc. # 29). The Court agrees that this claim should be dismissed in part. To the extent Roman bases the FLSA claim on normal travel time between home and work that was not coupled with any other activity, this claim is dismissed with

prejudice. See 29 C.F.R. § 785.35 ("Normal travel from home to work is not worktime."); see also Preston v. Settle Down Enters., Inc., 90 F. Supp. 2d 1267, 1280 (N.D. Ga. 2000)("The principle that ordinary home-to-work travel is not compensable has been applied to situations where travel to the work site is not coupled with any other activity."); Chapman v. Grable Plumbing Co., No. 8:10-cv-1202-T-30AEP, 2011 WL 3269628, at *6 (M.D. Fla. Aug. 1, 2011)(granting summary judgment as to commute time because "there is nothing in the record that suggests that Chapman's travel time from his home to his first service call and from his last service call to his home was anything more than commuting time, which is not compensable").

But, the Fourth Amended Complaint alleges Roman was not compensated for any travel time to and from job sites. And Tyco has not presented any argument as to travel time besides ordinary commuting. Therefore, the FLSA claim survives as to all other travel time, including travel between job sites and any non-ordinary commute time — i.e., time during Roman's commute in which he may have made stops or performed other tasks on behalf of Tyco. See 29 C.F.R. § 785.36 (noting "[t]here may be instances when travel from home to work is overtime," such as when an employee is required to return to

work after normal working hours because of an emergency); 29 C.F.R. § 785.41 ("Any work which an employee is required to perform while traveling must, of course, be counted as hours worked.").

**IV. Conclusion**

Roman's claims for breach of oral contract, breach of implied contract, and forced labor are dismissed with prejudice. To the extent Count IV for violation of the FLSA is based on ordinary commute time, that claim is dismissed with prejudice. But, to the extent Roman bases his claim on any other uncompensated travel time, Count IV survives.

Accordingly, it is

**ORDERED, ADJUDGED** and **DECREED:**

(1) Defendant Tyco Simplex Grinnell's Motion to Dismiss the Fourth Amended Complaint (Doc. # 29) is **GRANTED IN PART AND DENIED IN PART.**

(2) Counts I, II, and III are **DISMISSED WITH PREJUDICE.**

(3) The Motion is **DENIED** as to Count IV to the extent the FLSA claim is based on travel time besides ordinary commuting time.

(4) Tyco Simplex Grinnell's answer to Count IV is due **August 23, 2017.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 8th day of August, 2017.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE